WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Louis Hambrick, Jr., <br> Plaintiff, <br> v. <br> Unknown Party, et al., <br> Defendants. | No. CV 18-00461-PHX-MTL (ESW) <br> **ORDER** |

Plaintiff James Hambrick brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendants Gay, Ryan, and Headstream move for summary judgment, and Plaintiff opposes. (Docs. 60, 90, 91.) The Court will grant Defendants summary judgment and dismiss this action with prejudice.

**I.     Background**

Plaintiff's claims stem from the medical care he received while in the custody of the Arizona Department of Corrections at the Arizona State Prison Complex (ASPC)-Eyman Meadows Unit in 2017 for a lump on the back of his neck. (Doc. 8 ¶ 3.) In Count One, Plaintiff alleges Defendant Gay violated his Eighth Amendment rights by refusing to order blood tests, x-rays, an MRI, or a biopsy of the lump on Plaintiff's neck, (*Id.*) In Count Two, Plaintiff alleges Defendant Ryan violated his Eighth Amendment rights by failing "to intervene in [Plaintiff's] medical situation, in order for Plaintiff to get the medical cancer screening for the lump on the back of his neck." (*Id.* at 6.) Plaintiff claims Defendant Gay told him that "the policies that Defendant[] Charles L. Ryan established . .

. allowed her to make decisions on whether Plaintiff would get medical treatment or how much medical treatment he would get, is [sic] how she based her decision on not getting Plaintiff medical treatment for his cancer in the back of his head." (*Id.* at 5.)

In Count Three, Plaintiff alleges Defendant Headstream violated his Eighth Amendment rights in her November 29, 2017 response to Plaintiff. Plaintiff claims Defendant Headstream stated that "she supports the medical policies that [were] established by Defendant Ryan that allows Corizon Health Corporation to run the ADOC inmate medical system." (*Id.* at 7.) Plaintiff claims Defendant Headstream was deliberately indifferent to his serious medical needs because she was aware of Plaintiff's concern about cancer from having reviewed his medical records, but failed to order treatment for Plaintiff. Plaintiff further alleges Defendant Headstream "has the power to tell the Corizon doctors [sic] after she reads the inmate files to get them medical treatment." (*Id.* at 8.) Plaintiff claims Defendant Headstream failed to research his "entire medical file" and "failed to order Doctor Gay to get Plaintiff's medical treatment for his cancer on the back on his neck." (*Id.*)

Defendants now seek summary judgment as to the claims in this action.

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. Facts**

In 2008, Plaintiff was seen at the Chandler Regional Medical Center for imaging to determine whether he had an abscess on the back of his neck. (Doc. 61 ¶ 1; Doc. 90 at 5:9-15.) Plaintiff underwent diagnostic imaging and no abscess was found. (Doc. 61 ¶ 1.) In June 2017, Plaintiff submitted a Health Needs Request (HNR) complaining of headaches and neck pain and indicating he had a bump on the back of his neck. (Doc. 61 ¶ 2; Doc. 90 at 5:16-19.) The next day, Nurse Fillicetti saw Plaintiff and determined that his right posterior scalp had a small amount of swelling, about the size of a dime. (Doc. 61 ¶ 3; Doc. 90 at 5:20-25.) About a week later, Plaintiff submitted another HNR, complaining that the lump was still there, and that he was experiencing headaches and neck pain. (Doc. 61 ¶ 4; Doc. 90 at 5:26.) Plaintiff saw Nurse Practitioner Hahn a few days later to address his knee pain. (Doc. 61 ¶ 4; Doc. 90 at 6:1-4.)

In late October, Plaintiff submitted an information resolution to his CO III, complaining that he had a lump on the back of his neck, but nothing was done and he would like a CT or MRI. (Doc. 61 ¶ 7; Doc. 90 at 6:6-10.) Nurse Ruehrup responded to Plaintiff's

informal complaint on November 7, noting that his lump was examined in late June and that Plaintiff was seen for knee pain in mid-July. (Doc. 61 ¶ 8; Doc. 90 at 6:11-19.) Nurse Ruehrup placed Plaintiff on the nurse's line for his headaches and lump to be evaluated again. (Doc. 61 ¶ 8; Doc. 90 at 6:11-19.) Plaintiff saw Nurse Gallant the same day. (Doc. 61 ¶ 9; Doc. 90 at 6:20.) Plaintiff reported a "non-painful" lump on the nape of his neck and that he had an abscess in 2008 that was drained, but he believed packing gauze was still lodged despite a procedure to remove it. (Doc. 61 ¶ 9; Doc. 90 at 6:20.) Nurse Gallant noted the area was warm with no redness, rash, or pain. Plaintiff was referred to the provider line and instructed to continue to take his ibuprofen for headaches. (Doc. 61 ¶ 9; Doc. 90 at 6:20.)

Defendant Gay examined Plaintiff on November 20. Plaintiff stated that the lump had been there for nine years and that there was previously a skin infection at the site. Plaintiff denied having a fever, chills, redness, or drainage. (Doc. 61 ¶ 10; Doc. 90 at 6:21-28.) Defendant Gay documented that the bump was raised, flesh tone, firm, and measured three inches in length. (Doc. 61 ¶ 10; Doc. 90 at 6:21-28.) She further noted that there were no hair changes or edema. She diagnosed a benign lipomatous neoplasm, possible scar tissue, or keloid scalp lesion, but no treatment was indicated. (Doc. 61 ¶ 10; Doc. 90 at 6:21-28.) She explained the possible diagnoses to Plaintiff and instructed him to return if his condition changed. (Doc. 61 ¶ 10; Doc. 90 at 6:21-28.)

Plaintiff then sent an informal complaint to Defendant Ryan, complaining that he had a life-threatening condition because surgical gauze was left in his neck and he required emergency surgery. (Doc. 61 ¶ 11; Doc. 90 at 7:2-11.) Defendant Headstream responded to Plaintiff on Defendant Ryan's behalf. She reviewed Plaintiff's medical records, noted that Plaintiff was recently evaluated for a non-painful lump on his neck, which was diagnosed as either scar tissue or a keloid scalp lesion and that neither diagnosis required treatment. (Doc. 61 ¶ 12; Doc. 90 at 7:12-15.) Defendant Headstream instructed Plaintiff to continue to submit a new HNR if he had questions or concerns. (Doc. 61 ¶ 12; Doc. 90 at 7:12-15.)

## IV. Discussion

### A. Eighth Amendment

Under the Eighth Amendment, a prisoner must demonstrate that a defendant acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective prong and a subjective prong. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; to satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.

*Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

### B. Nurse Practitioner Gay

Defendants argue that NP Gay appropriately assessed the lump on Plaintiff's neck, determined that he had scar tissue or a lipoma, that he should continue to take his ibuprofen for any headaches, and that further treatment was not necessary. She specifically disputes that she ever told Plaintiff that he was suffering from cancer or that "other inmates had more serious medical problems than he had and that he needed to wait his turn." (Doc. 60 at 10-12.)

In Response, Plaintiff argues that Defendant Gay did nothing to treat the lump on the back of his neck and that he suffered a delay of five months in between appointments and, as a result, the care he received was deliberately indifferent. But to establish deliberate indifference, Plaintiff must come forward with evidence that "the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the individual "chose this course in conscious disregard of an excessive risk to plaintiff's health."

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). The crux of Plaintiff's claim is that he believes diagnostic testing and treatment was or is necessary for the lump on his neck and the delay he experienced between June and November ipso facto constitutes deliberate indifference. But one fatal flaw in Plaintiff's argument is there is simply no evidence in the record that the lump on his neck is anything other than a benign lipoma or keloid lesion that does not require treatment. As a result, Plaintiff's claim is a disagreement with Defendant Gay's decision not to treat the lump, which is insufficient to defeat summary judgment. And Plaintiff offers no evidence apart from his own conclusory assertions to support his claim that another course of action was required. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'") (citations omitted).

To the extent that Plaintiff contends that Defendant Gay told him it could be cancer does not preclude summary judgment. This does not mean that she thought it was cancer and chose not to treat it. Indeed, Plaintiff himself did not believe he had cancer, but thought he had "surgical gauze" left in his neck from a prior procedure. (Doc. 61, Ex. J at 52.) Nor does Plaintiff dispute that he was provided ibuprofen to address his headaches and neck pain. (Doc. 61, Ex. H at 44.) In short, to defeat summary judgment, Plaintiff must present evidence sufficient for a reasonable jury to return a verdict in his favor. *See Anderson*, 477 U.S. at 248. Plaintiff fails to introduce any evidence apart from his own conclusory allegations. Accordingly, Gay is entitled to summary judgment.

### C.  Ryan and Headstream

Under Ninth Circuit law, a defendant can be liable for failure to act. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Generally, whether a defendant's denial of administrative grievances is sufficient to state a claim depends on several facts, including whether the alleged constitutional violation was ongoing, *see e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010), and whether the defendant who responded to the grievance had authority to take action to remedy the alleged violation, *see Bonner v. Outlaw*, 552 F.3d 673, 679 (8th Cir. 2009). However, regarding medical decisions, prison

administrators generally are not deliberately indifferent when their failure to act is based upon a medical evaluation; that is, because administrators are not doctors, they have no duty to investigate or override decisions of medical staff. *Cf. Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (finding no deliberate indifference where supervisor signed off on plaintiff's grievance appeal without independently reviewing plaintiff's claims because the supervisor had no independent experience in particular area of medicine and relied on the medical opinions of staff with the relevant expertise).

In denying Plaintiff's grievances, Defendant Ryan and his designee Defendant Headstream relied on the professional medical judgment of Plaintiff's provider, who had determined that treatment was not indicated for the benign lipoma or keloid lesion on Plaintiff's neck. This reliance on the provider's conclusions was reasonable, and merely denying Plaintiff's grievances does not amount to deliberate indifference. Accordingly, there is no genuine dispute of material fact concerning whether Defendants Ryan or Headstream were deliberately indifferent to Plaintiff's serious medical needs. The Court will therefore grant Defendants' Motion for Summary Judgment in favor of Defendants Ryan and Headstream.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 60).

(2) Defendants' Motion for Summary Judgment (Doc. 60) is **granted**.

(3) This action is terminated with prejudice and the Clerk of Court must enter judgment accordingly.

Dated this 16th day of March, 2020.

Michael T. Liburdi
United States District Judge